## West Market Street Paving.

*Road law—Paving street—Ordinance — Assessments — Cities of second class—Act of May 6, 1909, P. L. 451—City street as main highway—General benefits—Municipalities—Taxation.*

1. An ordinance of a city of the second class providing for the paving of a street, "the cost, damages and expenses of the same to be assessed against and collected from properties specially benefited," complies with the Act of May 6, 1909, P. L. 451, authorizing cities of the second class, in paving streets, to assess the costs and

expenses thereof in whole or in part on the city or the owners of real estate abutting thereon "according to the foot front rule or according to benefits as council shall by ordinance determine."

2. In such case there is no essential difference between a direction to assess "according to benefits" and to assess "property specially benefited."

3. The appellate court will not set aside an award against property owners by viewers, confirmed by the court below, in the absence of irregularities.

4. Such an award is a species of taxation and the property owner has only such rights of contest and defense as the legislature chooses to confer upon him.

5. There is no provision in the Act of May 6, 1909, P. L. 451, or in any other statute, reserving to property owners the right to require a further view or the taking of additional testimony by the court touching the amount of the assessment.

6. A property owner against whom assessments have been made for the paving of a city street cannot object to them because the street formed part of a state highway and was thus subjected to a large amount of through travel, and that consequently a more substantial part of the cost should be imposed upon the city.

7. Such a rule would be impractical and ignores the fact that the general benefit to the public is shared by the abutting owners in addition to the special benefit derived by reason of the location of their property on a state highway.

Argued November 29, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

Appeal, No. 71, Jan. T., 1927, by John Culkin et al., property owners, from order of Q. S. Lackawanna Co., dismissing exceptions to award of jury of view, in re Paving of West Market Street from Brick Avenue to Hollow Avenue, Scranton, Pa. Affirmed.

Exceptions to award of jury of view. Before EDWARDS, P. J., NEWCOMB and MAXEY, JJ.

The opinion of the Supreme Court states the facts.

Exceptions dismissed. John Culkin et al., property owners, appealed.

Error assigned was, inter alia, order, quoting record.

*John P. Kelly*, with him *T. A. Donahoe*, for appellant.
—The ordinance does not meet the requirements of the statute.

Municipal assessments for local improvements are the creatures of statute and are matters of strict law; if the law is not followed, the assessment is without legal foundation and void: Scranton Sewer District, 213 Pa. 4; Wheeler Ave. Sewer, 214 Pa. 504.

There being no appeal, the property owner has no remedy against excessive and confiscatory assessment except by exception: Ohio Val. Water Co. v. Ben Avon, 253 U. S. 287.

The assessments are substantially excessive: Norwood v. Baker, 172 U. S. 269; Wagner v. Leser, 239 U. S. 207.

Cost and expenses are to be assessed according to benefits, if sufficient property benefited can be found, and, if not, then the deficiency is to be paid by the municipal corporation: Park Avenue Sewers, Parker's App., 169 Pa. 433; Beachwood Ave., 194 Pa. 86; Martin v. District of Columbia, 205 U. S. 135.

*Phillip V. Mattes*, with him *C. B. Little*, City Solicitor, for appellee.—To attempt to introduce into the assessments for paving a street the principle that the cost of paving a street that is used generally by the traveling public should be borne substantially by the City of Scranton, would be to introduce an entirely new principle of paving assessment and would be most unfair to those property owners who have already paid for the paving of streets in the City of Scranton which are already paved.

The paving ordinance was valid: Phila. v. Rice, 274 Pa. 256.

The assessments did not exceed the benefits received: Phila. v. Conway, 257 Pa. 172; Michener v. Phila., 118 Pa. 535; Scranton v. Jermyn, 156 Pa. 107.

Owners of property on a city street are not entitled to preference on paving assessments because the street is a main highway: Oil City Boiler Works, 152 Pa. 348.

OPINION BY MR. JUSTICE FRAZER, January 3, 1927:

In 1920, the council of the City of Scranton adopted an ordinance, later approved by the mayor, for grading, paving and curbing of West Market Street in that city between Brick Avenue and Hollow Avenue, "the cost, damages and expenses of the same to be assessed against and collected from properties specially benefited in accordance with the provisions of the act relating thereto and regulating the same." Upon completion of the improvement, viewers were appointed and, after a second view and hearing, the cost of the grading, etc., was fixed at $95,720.13, of which amount $12,583.18 was assessed against the municipality, and the remainder of the expense charged as benefits against abutting property. Exceptions filed to the viewers' report were after argument dismissed by the court below and the report confirmed. This appeal on the part of a number of property owners followed.

The validity of the ordinance is questioned by appellants, who allege the provision quoted above fails to establish the method by which the assessment should be determined, whether by foot front rule or according to resulting benefits. The ordinance was adopted pursuant to authority contained in the Act of May 6, 1909, P. L. 451, conferring upon cities of the second class in this Commonwealth, power to pave and curb streets and provide for the payment of the cost and expenses thus incurred "in whole or in part by the city or by the owners of real estate bounding and abutting thereon, which cost and expense, upon abutting real estate, shall be assessed according to the foot front rule or according to benefits, as council shall by ordinance determine."

Although the act provides for assessment "according to benefits" and the ordinance directs the cost to be as-

sessed against "properties specially benefited," there is no room for doubt as to the method intended by council. Clearly an assessment by the foot front rule was not intended, and though the exact language of the act was not carried into the ordinance we can see no essential difference between a direction to assess "according to benefits" and to assess "property specially benefited."

Appellants further claim the assessments against their several properties were excessive and exceeded accruing benefits. Much testimony was taken touching the value of abutting properties both before and after completion of the street improvement, and, as is usual in such case, the evidence was conflicting, and opinions of witnesses as to value varied to a considerable extent. The viewers, in arriving at a conclusion, had the benefit of knowledge gained by a personal inspection of the premises, in addition to testimony of many witnesses as to value; the court below, in its opinion discussing the evidence of value, said: "The viewers were justified in determining that the properties fronting on said street were benefited to the amounts respectively assessed against them. We do not believe that there is a lot on said street which has not increased in value since the pave was laid, and by reason thereof to an extent far greater than the amount assessed against said lot by reason of said pave; and, while the increase in value is not entirely attributable to said paving, in any event the increase in value of the abutting property due to said paving equals in amount the assessment levied against said property to defray the cost of said improvement."

It is not within our province, in cases of this character, to sit as a board of viewers, and determine the question of the amount of benefits attaching to abutting property. In absence of irregularity in the proceedings before the viewers, their conclusion must be accepted as a final determination of such question: Murdoch v. City of Pittsburgh (No. 2), 223 Pa. 283, 285. Claims of the character now before us are a species of taxation, and

the property owner has only such rights of contest and defense as the legislature chooses to confer upon him: Scranton v. Jermyn, 156 Pa. 107, 111; we find no provision in the Act of 1909, or in any other statute, reserving to property owners the right to require a further view or the taking of additional testimony by the court touching the amount of the assessment in this and other like cases.

Finally, appellants contend West Market Street forms part of a state highway running through the City of Scranton, and for this reason necessarily carries a large amount of through traffic, which circumstance is relied upon to show the exceptional character of the highway, and is advanced as a reason why a more substantial part of the cost should be borne by the municipality, regardless of the practice adopted elsewhere in the city in assessing benefits for street improvements.

The adoption of this suggested plan, for the reason given, would introduce an entirely new principle in determining the amount chargeable for municipal street improvements and establish as a basis, not the amount of benefits accruing to abutting owners, but the extent of such advantages, less such benefits as might flow to the public in general, or such part of the public as may have occasion to use the street. A rule of this character would be impractical, and, furthermore, the argument ignores the fact that the general benefit to the public is shared by abutting owners, in addition to the special benefit derived by reason of the location of their property. The many excellent highways constructed in recent years throughout the Commonwealth, is a benefit to be enjoyed freely by all persons, regardless of their residence, and if those who happen to own property on a street of a municipality forming a continuation of a state highway, feel they are paying for advantages resulting to the public in general, they may derive comfort from the fact that they also are privileged to make use of the highway free of charge in other communities,

where its construction was paid for by abutting property owners.

Persons living in a city are obliged to accept the responsibilities of such residence with its benefits.  To adjust the burdens of street improvements in all cases with exact equity is impossible, just as it is impracticable to do exact justice in the assessment of taxes.  Many persons pay taxes for which they derive less benefit than their neighbors.  A man without children is obliged to contribute to the support of public schools, though he is without children to derive a direct benefit from such institutions.  He must satisfy himself in such case with the indirect benefits received by reason of the advantage to the community derived from a free and compulsory educational system.  "Education produces a higher degree of intelligence, the fruits of which are seen in increased good order and diminished crime.  When a man comes to pay his general taxes, he cannot be permitted to allege that he derives no benefit therefrom" : Michener v. Phila., 118 Pa. 535, 541.  Many other illustrations might be mentioned where one member of society must necessarily contribute to the common good, regardless of whether he derives the same share of direct benefit from such contribution as may be obtained by his neighbors.  No law can do exact justice in all cases.  And as long as we are members of the complex state of society found especially in our large cities, we must be willing to yield at least a part of our personal rights and desires for the common good.

The decree of the court below is affirmed at appellants' costs.